# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**WESTERN DIVISION**
312 N. SPRING ST., RM. G-8
LOS ANGELES, CA 90012
(213) 894-3535
FAX (213) 894-6860

**SOUTHERN DIVISION**
Ronald Reagan Federal Bldg. and
United States Courthouse
411 W. Fourth St., Suite 1053
Santa Ana, CA 92701-4516
(714) 338-4750

**EASTERN DIVISION**
4100 Main Street, Rm. 137-A
Riverside, CA 92501
(909) 276-6170

**SHERRI R. CARTER**
**CLERK OF COURT**

DATE: 11/27/00 _____

00-6270-CR-Graham

TO:   CLERK, U. S. DISTRICT COURT

_____ Southern _____ District of Florida _____

Federal Courthouse Square, 301 N.E. First Ave., Miami, FL 33132

Dear Sir/Madam:

RE:    Transfer to U.S. Magistrate Judge

Case No. 00-2792M _____

U.S.A.  v. Charles Howard Martin _____

Pursuant to Rule 40 of the Federal Rules of Criminal Procedure, enclosed are the following:

1)     Certified copy of entire case file.

2)     Certified copy of docket sheet

3)     ☐ Letter re status of property bond

4)     ☒ Original bond enclosed

       ☐ Original bond to be forwarded by the Fiscal Section

       ☐ Certified copy of final commitment

       ☐ Original Passport

       ☐ Original Declaration re: Passport

Please acknowledge receipt on the copy of this letter and return to this office.

CLERK, U. S. DISTRICT COURT

By M. Mead _____

213-894-3642

Deputy Clerk

cc:   U.S. Attorney (this district)
      U.S. Attorney (receiving district)

Receipt of the above-described documents is acknowledged herewith and assigned  case number:

_____

Dated: _____        CLERK, U. S. DISTRICT COURT

                                       _____

                                       Deputy Clerk

CR-48 (8/99)                  LETTER RE:  RULE 40 - TRANSFER OUT

```
                                                     TERMED
                  U.S. District Court
        Central District of California (Western Div.)

        CRIMINAL DOCKET FOR CASE #: 00-M -2792-ALL

USA v. Martin                                Filed: 11/20/00
Dkt# in other court: None

Case Assigned to:    Unassigned

CHARLES HOWARD MARTIN (1)         Anthony Eaglin
aka                               FAX 213-894-0081
Charles Martin                    [COR LD NTC pda]
     defendant                    Office of the Federal Public
  [term  11/20/00]                Defender
                                  321 E 2nd St
                                  Los Angeles, CA 90012-4206
                                  213-894-2854
```



```
Pending Counts:

    NONE


Terminated Counts:

    NONE



Complaints                    Disposition

Dft in viol of 18:1343, 371, 2    Crt ord dft HTA to Southern
                                  District of Florida at Miami
                                  (-1)


U. S. Attorneys:

    NONE
```



```
Docket as of November 27, 2000 2:50 pm            Page 1
```

Proceedings include all events.                                    TERMED
2:00m 2792-ALL USA v. Martin

11/20/00  2        REPORT COMMENCING CRIMINAL ACTION as to Charles Martin
                   arrested on 11/19/00. Defendant's date of birth: 1/17/59.
                   (mrgo) [Entry date 11/22/00]

11/20/00  1        AFFIDAVIT RE OUT-OF-DISTRICT WARRANT filed as to Charles
                   Martin, originating in the USDC, Southern District of FL,
                   at Fort Lauderdale. Defendant charged in violation of:
                   18:1343, 371, 2. Signed by agent R Smith FBI-Special Agent.
                   (mrgo) [Entry date 11/22/00]

11/20/00  3        DEFENDANT Charles Martin arrested on warrant issued from
                   USDC, Southern District of FL at Fort Lauderdale. (mrgo)
                   [Entry date 11/22/00]

11/20/00  4        MINUTES OF ARREST ON O/D WARRANT held before Magistrate
                   Judge Rosalyn M. Chapman as to Charles Martin: Defendant
                   arraigned and states true name is Charles Howard Martin.
                   atty Anthony Eaglin present, Bail set in the amount of
                   $30,000 A/B, with following conditions of release: w/affid
                   of surety (no just) by mother, PSA supv, travel restricted
                   to CDC of CA, not illegally use or possess alcohol or be in
                   the the presence of anyone illegally using or possessing
                   alcohol, residence approved by PSA, maintain employment, no
                   change w/o PSA approval. Court orders Charles Martin held
                   to answer to USDC, Southern District of Floria at Miami.
                   Court orders bond to transfer. Defendant committed to the
                   custody of the U. S. Marshal. Case cont for fur proc
                   (R-20) set for 10:30am on 11/30/00 Tape No.: 00-8 (release
                   #23046) (mrgo) [Entry date 11/27/00]

11/20/00  5        FINANCIAL AFFIDAVIT filed as to Charles Martin (mrgo)
                   [Entry date 11/27/00]

11/20/00  6        BOND AND CONDITIONS OF RELEASE filed as to Charles Martin,
                   in the amount of: $30,000.00 A/B. Conditions of Release
                   w/affid of surety (no just) by mother, not apply for
                   issuance of a passport during the pendency of this case,
                   PTA supv, travel is restricted to CDC of CA & S/D of FL, do
                   not enter premises of any airport, seaport, or terminal
                   which permits exit from the continental US w/o crt
                   permission, do not enter premises of any bus, railroad,
                   airport, or seaport terminal which permits exit from area
                   of restricted travel w/o crt permission, do not use or
                   possess alcohol, reside w/PSA approval, maintain
                   employment, no change w/o PSA. Approved by Magistrate Judge
                   Rosalyn M. Chapman . Original bond routed to: FILE.
                   (Release #23046) (mrgo) [Entry date 11/27/00]

11/20/00  7        AFFIDAVIT OF SURETIES (No Justification - Pursuant to Local
                   Criminal Rule 5.2.8) filed as to Charles Martin in the
                   amount of $30,000.00, by Surety: Mother, Roberta Howard
                   Martin for bond [6-1]. (mrgo) [Entry date 11/27/00]


Docket as of November 27, 2000 2:50 pm                        Page 2

APPROVED ON: _11/20/00_

By (Print Name): _R. Stephen Kramer_

☐ PSA Officer (for material witness only)    ☐ AUSA

Signature: _____

Extension: _3-756_

CLERK, U.S. DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA

PLAINTIFF,

v.

_Charlie Martin_

DEFENDANT(S).

CASE NUMBER

_00-2792 M_

**AFFIDAVIT OF SURETIES**

(No Justification - Pursuant to Local Criminal Rule 5.2.8)

I, the undersigned surety, state on oath that I permanently reside within the jurisdiction of the United States District Court for the Central District of California at the address indicated below or in:

_____
(City)                                    (State)

I further state that I have read and understand the provisions of the bond executed by the above-named defendant to which this affidavit is affixed as "Attachment A", and I agree to be bound as a condition of this bond by the provisions of Local Criminal Rule 5.5. as set forth on the reverse side of this document and further acknowledge and agree that I and my personal representatives are bound as a condition of this bond, jointly and severally with the defendant and other sureties, to pay to the United States of America the sum of $ _30,000_ , in the event that the attached bond is forfeited.

I further understand that it is my obligation to inform the Court and counsel of any change in residence address or employment of the defendant immediately upon becoming aware of such fact.

I further agree and understand that, unless otherwise ordered by the Court, the bond to which this affidavit is attached is a continuing bond (including any proceeding on appeal or review) which shall continue in full force and effect until such time as the undersigned is duly exonerated by Order of the Court. _CA DL# D0399549_

I DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON THIS _20_ DAY OF _November_ , 19 _2000_ .

_____
Signature of Surety

_Mother_
Relationship of Surety

ENTER ON ICMS

NOV 27 2000

_SEE REVERSE SIDE_

_Roberta Howard Martin_
(Print Name of Surety) _DOB: 11-3-35_

_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_
(Social Security No. of Surety)

_1376 Via Zurita_
(Address of Surety - Please Print)

_Claremont, CA 91711_
(City)          (State)     (Zip Code)

CR-4 (1/96)                    AFFIDAVIT OF SURETY (NO JUSTIFICATION)

I hereby attest and certify on _____
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody.

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

By _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>PLAINTIFF,<br><br>v. Howard<br>Charles Martin<br>DEFENDANT | CASE No. : 90-2792M<br>☐ COMPLAINT<br>☑ AFFIDAVIT  FILED: 11-20-00<br>VIOLATION: 18', 1343', 371', 2<br>TAPE NO. OO-8    DATE  11-20-00<br><br>PROCEEDINGS SHEET - LOCAL / OUT-OF-DISTRICT CASE |

1. PROCEEDINGS HELD BEFORE UNITED STATES MAGISTRATE JUDGE ___Chapman___

PRESENT: __D. Taylor-Spear__  __S Kramer__  ___N/A___
    Deputy Clerk      Assistant U.S. Attorney      Interpreter / Language

☑ Defendant informed of charge and right to: remain silent; appointment of counsel, if indigent; and
    ☑ preliminary hearing    OR   ☐ removal hearing / Rule 20.
☑ Defendant states true name is   ☐ as charged   ☑ is __Charles Howard Martin__
☑ Defendant advised of consequences of false statement in financial affidavit.
☐ Attorney: __A. Eaglin__      ☐ Retd ☑ Apptd. ☐ S/A ☑ DFPD ☐ Panel ☐ Poss. Contribution Ordered
☑ Bail set at $ __30,000.00__ :

TYPE OF BOND

☐ Personal Recognizance (Signature only-no dollar amount) N/A
☐ Unsecured Appearance Bond in amount of $_____
☑ Appearance Bond in amount of $__30,000.00__ N/A
    ☐ with cash deposit (amount or %) _____
    ☑ with affidavit of surety (no justification) (Form CR-4) __no surety__
    ☐ with justification affidavit of surety (Form CR-3)
    ☐ with deeding of property
☐ Collateral Bond in amount of $ _____
    (cash or negotiable securities)
☐ Corporate Surety Bond in amount of $_____
    (Corporate Surety Bond requires separate form)
☐ Release NOW and justify by _____ OR
    appear before Magistrate Judge _____
    at _____ AM/PM on_____

CONDITIONS OF RELEASE

☑ PSA Supervision      ☐ Intensive
☐ Surrender passport
☐ Bail subject to Nebbia Hearing
☐ Travel restricted to C/D CA; & Dist of FL
☐ Avoid places of egress
☐ Alcohol/Drug testing __Alcohol__
☑ Not illegally use or possess drugs or be in the presence of
    anyone illegally using or possessing drugs. Alcohol
☐ Release only to PSA
☑ Residence approved by PSA
☐ Not possess firearms or be in the presence of anyone using
    or possessing firearms
☑ Other __Maint emply'; no chg w/o__
    __PSA appr.__

☑ Defendant committed to the custody of the U.S. Marshal.   ☑ Preliminary Hearing waived.
☐ Prelim/Hrg set for _____, 4:30 PM Post-Indict Arrn set for: _____at 8:30 AM
☐ Court ORDERS_____ phone calls: ☐ within 24 hours ☐ forthwith ☐ ASAP ☐ as requested.
☐ Court ORDERS medical abstract issued re: _____
☐ Defendant's motion to dismiss for lack of probable cause: ☐ DENIED    ☐ GRANTED
☐ Defendant executes waiver of removal hearing and arrival of process.
☐ Process received. ☐ Defendant executes Rule 20 consent forms. S0 Dist of FL
☑ Court ORDERS defendant Held to Answer to __11-4-00__ District of __301 N. Miami Ave__
☑ Bond to transfer. Defendant to report on or before __12-4- D.O.__ __Miami, FL__
☐ Warrant of removal and final commitment to issue.
☑ Case continued to __11-30-00__ at __10:30 AM/PM for FP pash R-20__

2. BOND POSTED:    Date __11-20-00__      Release ORDERED. No. 23046 bef 12
    Defendant's address and phone _____

ENTER ON ICMS

By _____
    Deputy Clerk

NOV 27 2000
mm

cc: AUSA

M-5 (10/97)      PROCEEDINGS SHEET - LOCAL / OUT-OF-DISTRICT CASE

# FINANCIAL AFFIDAVIT

**CJA 23**
(Rev. 5/98)

## IN SUPPORT OF REQUEST FOR ATTORNEY, EXPERT OR OTHER COURT SERVICES WITHOUT PAYMENT OF FEE

| IN UNITED STATES | ☒ MAGISTRATE | ☐ DISTRICT | ☐ APPEALS COURT or | ☐ OTHER PANEL (Specify below) | LOCATION NUMBER |

IN THE CASE OF

USA vs. Charlie Martin

FOR CDC AT LA

LOCATION NUMBER: 05301

PERSON REPRESENTED (Show your full name): Charlie M...

11-27-00
I hereby attest and certify that the foregoing document is a full, true and correct copy of the original on file in my office, and in my legal custody.

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DEPUTY CLERK

1 ☒ Defendant – Adult
2 ☐ Defendant – Juvenile
3 ☐ Appellant
4 ☐ Probation Violator
5 ☐ Parole Violator
6 ☐ Habeas Petitioner
7 ☐ 2255 Petitioner
8 ☐ Material Witness
9 ☐ Other (Specify)

DOCKET NUMBERS
Magistrate: 00-2792 M
District Court:
Court of Appeals

CLERK US DISTRICT COURT
NOV 20 2000
BY _____ DEPUTY

CHARGE/OFFENSE (describe if applicable ... ☐ Felony ☐ Misdemeanor)

18 USC §§ 371, 1343

## ASSETS

### EMPLOYMENT

Are you now employed? ☒ Yes    ☐ No    ☐ Am Self Employed
Name and address of employer: Omega Capital Group / Orange, CA

**IF YES, how much do you earn per month? $** 2400.
**IF NO, give month and year of last employment** How much did you earn per month? $ 20

If married is your Spouse employed? ☐ Yes ☐ No
**IF YES, how much does your Spouse earn per month? $** _____
If a minor under age 21, what is your Parents or Guardian's approximate monthly income? $ _____

### OTHER INCOME

Have you received within the past 12 months any income from a business, profession or other form of self-employment, or in the form of rent payments, interest, dividends, retirement or annuity payments, or other sources? ☐ Yes ☒ No

**IF YES, GIVE THE AMOUNT RECEIVED & IDENTIFY $ THE SOURCES**

| RECEIVED | SOURCES |
|---|---|
| | |
| | |
| | |

### CASH

Have you any cash on hand or money in savings or checking account ☒ Yes ☐ No **IF YES, state total amount $** 500

### PROPERTY

Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)? ☒ Yes ☐ No

**IF YES, GIVE THE VALUE AND DESCRIBE IT**

| VALUE | DESCRIPTION |
|---|---|
| $ 3000 | IRA Account |
| $ 4,000 | 1993 Ford Explorer |

ENTER ON ICMS

## OBLIGATIONS & DEBTS

### DEPENDENTS

MARITAL STATUS
☒ SINGLE
☐ MARRIED
☐ WIDOWED
☐ SEPARATED OR DIVORCED

Total No. of Dependents: 0

List persons you actually support and your relationship to them

NOV 27 2000

### DEBTS & MONTHLY BILLS

(LIST ALL CREDITORS, INCLUDING BANKS, LOAN COMPANIES, CHARGE ACCOUNTS, ETC.)

| APARTMENT OR HOME: Creditors | Total Debt | Monthly Payt. |
|---|---|---|
| Rent & Utilities | $ | $ 1200 |
| Credit Card Bills | $ 2500 | $ 55 |
| Food & Clothing | $ | $ 250 |
| Miscellaneous | $ | $ 200 |

I certify under penalty of perjury that the foregoing is true and correct. Executed on (date) 11-20-00

SIGNATURE OF DEFENDANT
(OR PERSON REPRESENTED) ▶ Charlie Marh

5

FILED

I hereby attest and certify on 11-27-00 that the foregoing document is a full, true and correct copy of the original on file in my office, and in my legal custody.

CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

DEPUTY CLERK

00 NOV 20 PH 12: 06

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NUMBER |
|---|---|
| PLAINTIFF | **00-2792M** |
| v. | CR- 00-6270 |
| CHARLES MARTIN | AFFIDAVIT RE |
| DEFENDANT(S). | OUT-OF-DISTRICT WARRANT |

The above-named defendant was charged by:

☒ Indictment  ☐ Information  ☐ Complaint  ☐ Bench warrant for:  ☐ Probation Violation  ☐ Failure to Appear

in the _Southern_ District of _Florida_ on _11/19/2000_

at _4:30_ a.m./p.m.  The offense was allegedly committed on or about _December 1995_

in violation of Title _18_ U.S.C., Section(s) _1343, 371, 2_ to wit: _____

A warrant for defendant's arrest was issued by:

☒ Magistrate Judge
☐ District Judge

Bond of $ _50,000_ was: ☒ Set  ☐ Recommended

Type of Bond: ☐ Personal Recognizance  ☐ Appearance  ☐ Corporate Surety  ☐ Unknown or Unspecified

Relevant document(s) on hand (attach): _____

I swear that the foregoing is true and correct to the best of my knowledge.

Sworn to before me, and subscribed in my

ENTER ON ICMS

NOV 22 2000

presence on _11-20-00_
Date

J. English
Deputy Clerk

_Signature of Agent_

Smith
_Print Last Name_

FBI - Special Agent
_Agency and Title_

CR-52 (5/98)    AFFIDAVIT RE OUT-OF-DISTRICT WARRANT

2:00
no int
P.D

FILED

00 NOV 20 PM 12:06

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | | CASE NUMBER |
|---|---|---|
| PLAINTIFF(S), | CR | 00 - 6270 |
| -VS-<br>Charles Martin | | **00-2792M** |
| DEFENDANT(S). | | REPORT COMMENCING CRIMINAL ACT |

**TO:   CLERK'S OFFICE, U.S. DISTRICT COURT**

All items are to be completed. Information not applicable or unknown will be indicated as "N/A".

1)   Date and time of arrest ___11/19/2000___, ___4:30___ a.m. (p.m.)

2)   Charges under which defendant has been booked at Metropolitan Detention Center (MDC)_____
18 , 1343 , 371 , 2

3)   Offense charged is a:   ☒ Felony   ☐ Minor Offense   ☐ Petty Offense   ☐ Other Misdemea

4)   U.S. Citizen:   ☒ Yes   ☐ No   ☐ Unknown

5)   Date of Birth:  01 / 17 / 1959

6)   The defendant is:   ☒ Presently in custody on this charge.
        ☐ At liberty on bond posted before Magistrate Judge.
        ☐ At liberty and warrant is requested.
   Federal   ☐ In custody on another conviction.
   State   ☐ In custody awaiting trial on these charges.

   *I hereby attest and certify on 11-27-00 that the foregoing document is a full, true and correct copy of the original on file in my office, and in my legal custody.*
   *CLERK U.S. DISTRICT COURT*
   *CENTRAL DISTRICT OF CALIFORNIA*
   *DEPUTY CLERK*
   *1095*

7)   Place of detention (if out-of-district):___MDC___

8)   Date detainer placed on defendant:_____

9)   This is a reprosecution of previously dismissed charges. (Docket/Case No._____
        Dismissed on motion of_____

10)   Name of Pretrial Services Officer:_____

11)   Remarks (if any):_____

12)   Date: _11/20/2000_

13) ___Todd B. Schallberg___
    **(Signature)**

14) ___Todd B. Schallberg___
    **(Name)**

15) ___Special Agent - FBI___   (2)
    **(Title)**

ENTER ON ICMS

NOV 22 2000

CR-64 (10/93)    REPORT COMMENCING CRIMINAL ACTION

AO 442 (Rev. 12/85) Warrant for Arrest  AUSA  STUART

FILED

*I hereby attest and certify on ___
that the foregoing document is a full, true
and correct copy of the original on file in
my office, and in my legal custody.*

# United States District Court

SOUTHERN        DISTRICT OF    CENTRAL DISTRICT OF CALIFORNIA

CLERK U.S. DISTRICT COURT

DEPUTY CLERK

UNITED STATES OF AMERICA

v.

CHARLIE MARTIN

**WARRANT FOR ARREST**

CASE NUMBER:

**00-2792M**

TO:   The United States Marshal
and any Authorized United States Officer

**00-6270**

CR-GRAHAM

YOU ARE HEREBY COMMANDED to arrest ___Charles Martin___
~~HANNIBAL PENNEY~~

Name

MAGISTRATE
TURNOFF

and bring  him forthwith to the nearest magistrate to answer a(n)

☒ Indictment    ☐ Information    ☐ Complaint    ☐ Order of court    ☐ Violation Notice    ☐ Probation Violation Petition

charging him  with (brief description of offense) knowingly and willfully conspiring with others to commit an offense and conspiracy to commit wire fraud against the U.S., that is, having devised a scheme to defraud persons throughout the U.S., by means of false and fraudulent pretenses, representations and promises, and for the purpose of executing the scheme and artifice, to knowingly transmit and cause the transmission of interstate wire (telephone) communications and the willful transmission of such wire communications in execution of said scheme and artifice so devised

in violation of Title   18   United States Code, Sections  371(conspiracy);1343 (wire fraud), and 2

CLARENCE MADDOX
Name of Issuing Officer

COURT ADMINISTRATOR/CLERK OF THE COURT
Title of Issuing Officer

Signature of Issuing Officer

FORT LAUDERDALE, FL
Date and Location

UNITED STATES MAGISTRATE JUDGE

Bail fixed at $ __50,000 PSB__                by ___
*not to be incarcerated overnight*

Name of Judicial Officer

ENTER ON ICMS

NOV 22 2000

**RETURN**

This warrant was received and executed with the arrest of the above defendant at

By

Deputy Clerk

Date

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| 10/19/2000 | Richard D. Smith | |
| DATE OF ARREST 11/19/2000 | FBI - Special Agent | |

196A-MM 65665-AA.   ③

DJS:sr

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00 - 6270 1

18 U.S.C. §1343
18 U.S.C. §371
18 U.S.C. §2

CR - GRAHAM

MAGISTRATE
TURNOFF

FILED by ___ D.C.

SEP 1 4 2000

*CLARENCE MADDOX*
*CLERK U.S. DIST. CT.*
*S.D. OF FLA. MIAMI*

UNITED STATES OF AMERICA,                    :

          Plaintiff,                        :

v.                                           :

EDWARD HEXTER,                               :
   a/k/a "David Best,"
MARK GOLDBERG,                               :
   a/k/a "Mike Gordon,"
   a/k/a "David Best,"                        :
   a/k/a "Bill Swanson,"
ROBY DUDLEY,                                 :
   a/k/a "Ted Brown,"
   a/k/a "Ed White,"
   a/k/a "Russ Walton,"                       :
CHARLIE MARTIN,
   a/k/a "Charlie Cole,"                      :
   a/k/a "Fred Murphy,"
   a/k/a "Jerry Fried,"
and                                          :
HANNIBAL PENNY,
   a/k/a "Jim St. James,"                     :
   a/k/a "Lincoln Green,"                     :
   a/k/a "Dr. Grant Maxwell,"                 :
   a/k/a "Dr. St. James,"                     :

          Defendants.                       :

---

## INDICTMENT

## COUNT 1

The Grand Jury charges that:

1

1.   From on an unknown time, but at least by April 1, 1991, through a date on or about July

17, 1996, in Broward County, and elsewhere, in the Southern District of Florida, the defendants,

EDWARD HEXTER,
a/k/a "David Best,"
MARK GOLDBERG,
a/k/a "Mike Gordon,"
a/k/a "David Best,"
a/k/a "Bill Swanson,"
ROBY DUDLEY,
a/k/a "Ted Brown,"
a/k/a "Ed White,"
a/k/a "Russ Walton,"
CHARLIE MARTIN,
a/k/a "Charlie Cole,"
a/k/a "Fred Murphy,"
a/k/a "Jerry Fried,"
and
HANNIBAL PENNY,
a/k/a "Jim St. James,"
a/k/a "Lincoln Green,"
a/k/a "Dr. Grant Maxwell,"
a/k/a "Dr. St. James,"

did knowingly, willfully and unlawfully, combine, conspire, confederate and agree  with each other

and others both known and unknown to the grand jury to commit an offense against the United

States, that is, having devised and intended to devise a scheme and artifice to defraud and for

obtaining money and property from persons throughout the United States by means of false and

fraudulent pretenses, representations and promises, and for the purpose of executing said scheme and

artifice, all the while knowing that said pretenses, representations and promises would be and were

false and fraudulent when made, did knowingly cause to be transmitted in interstate commerce certain

signs, signals and sounds by means of wire communication, that is, interstate wire and telephone

conversations' and signals for the purposes of executing the scheme and artifice to defraud, in

2

violation of Title 18, United States Code, Sections 1343 and 2.

## BACKGROUND

At various times material to this Indictment,

2.    Best Marketing, Inc., was a Florida corporation operating out of 4300 North University Drive, Suite D-206, Lauderhill, Florida, in Broward County, in the Southern District of Florida. Best Marketing, Inc., (hereinafter "Best" or "Best Marketing") was purportedly in the business of selling advertising products (also known as advertising specialty items) such as printed or embossed pens, key chains, magnets, caps, ice scrapers/removers, mugs and other items which could be imprinted with business and/or advertising text and information. Sales were primarily made by way of interstate telephone calls.

3.    Defendant EDWARD HEXTER (hereinafter "HEXTER") owned and controlled Best Marketing during its operation. HEXTER caused and participated in the formation of Best Marketing and directed the operations of Best personally, as well as through management and other employees whom HEXTER hired, supervised and controlled, or whose hiring, supervision and control he caused and directed. As part of the operation of Best Marketing, HEXTER used a registered alias or "doing business as" designation for himself as "David Best," as President of Best Marketing.

4.    Defendants MARK GOLDBERG, ROBY DUDLEY, CHARLIE MARTIN, and HANNIBAL PENNEY, were employed by HEXTER as salesmen and "loaders" or "re-loaders" at Best Marketing and, at the various times of their employment, were particularly successful salesmen who were entrusted with difficult and/or potentially lucrative customers. As a result of the skill of these employees and their ability to weave misrepresentations or omissions, as convenient or

3

necessary, into sales presentations, Best Marketing profited to a significant degree in the course of conduct which acted as a fraud on its customers.

5.      Defendant MARK GOLDBERG, ("GOLDBERG") from at least 1991 continuing to and through at least July 17, 1996, worked as a telephone salesman and/or "loader/re-loader" to solicit money from customers for the purchase of advertising specialty items and products.  To facilitate sales, GOLDBERG used various names over the telephone ("phone names") including "Mike Gordon," "David Best," and "Bill Swanson," as his adopted identities.

6.      Defendant ROBY DUDLEY ("DUDLEY") worked as a salesman and/or "loader/re-loader" for Best Marketing from at least 1991 through at least July 17, 1996, where he solicited funds from telephone customers for the purchase of advertising specialty items and products.  To facilitate sales, DUDLEY used various phone names, including "Ted Brown," "Ed White," and "Russ Walton," as his adopted identities.

7.      Defendant HANNIBAL PENNEY ("PENNEY") worked as a salesman and/or "loader/re-loader" for Best Marketing from on or about December 1995, through approximately at least July 17, 1996, where he solicited funds from telephone customers for the purchase of advertising speciality items and products.  To facilitate sales PENNEY used various phone names, including "Lincoln Green," "Dr. Grant Maxwell," "Dr. St. James," and "Jim St. James."

8.      Defendant CHARLES MARTIN ("Martin") worked as a salesman and/or "loader/re-loader" for Best Marketing from in or about December 1995, through approximately at least July 17, 1996, where he solicited funds from telephone customers for the purchase of advertising speciality items and products.  To facilitate sales, MARTIN used various phone names, including "Charlie Cole," "Fred Murphy", and "Jerry Fried."

4

9.    All of the above-named defendants engaged in "telemarketing" as defined in Title 18, United States Code, Section 2325, that is, a plan, program and promotion to induce the purchase of goods by use of at least one interstate telephone call initiated by a person conducting such plan, program and promotion.

### OBJECTS OF THE CONSPIRACY

10.    It was an object of the conspiracy that the defendants, having devised and intending to devise a scheme and artifice to defraud, would and did obtain monies and credits from customers by making and/or causing the making of false, misleading and fraudulent statements, representations and promises, all for the purpose of the enrichment of the defendants and others employed by Best Marketing.

11.    It was further an object of the conspiracy that defendants would induce the sale of goods and merchandise at inflated prices over the telephone, by knowingly and willfully concealing and omitting material facts, all of which worked together to conceal the fraudulent nature of the business operations and sales and the true identities and status of those who enriched themselves through the conspiracy, which was a scheme and artifice to defraud.

### MANNER AND MEANS OF THE CONSPIRACY

The manner and means employed by defendants to accomplish the objects of the conspiracy included the following:

12.    From an unknown time prior to April 1, 1991, until at least approximately July 17, 1996, Best Marketing would purchase names of potential customers ("leads") or "lead sheets" from other businesses or entities, including, from time to time, Dunn and Bradstreet and American Business Lists. Many of those targeted as customers would include small businesses, many of which would

5

have less exposure to sophisticated advertising programs, and thus, less experience with average and normal pricing for advertising speciality items and the common means of marketing them.

13.    It was part of the conspiracy that salespersons would be employed to act as "fronters" in the "front room" to initiate calls (literally, the first round of telephone calls from Best) to potential customers, primarily owners of small businesses, to tell each customer that he or she was eligible to receive one of a list of "premiums" or "bonuses" awarded to purchasers of certain advertising speciality items. The specialty items could be imprinted with the business name, address, and/or telephone number, and/or a slogan such as "Say No to Drugs." Typically the "premium" list would include five items initially, though the number of "premiums" or bonus awards might vary from four to six, or even more on later offers. A typical list of premiums would include (by way of example) the following:

        a.    An automobile [or other vehicle such as a truck or sports utility vehicle];

        b.    A vacation certificate;

        c.    An item of electronic equipment [such as a camera, television, or stereo];

        d.    An item of jewelry [watch, bracelet, etc]; or

        e.    A check [often in an amount of at least $1500.00].

14.    On such "front" sales, the salespersons/co-conspirators would imply that the least valuable premium guaranteed to be awarded was the item listed last (the check), when in truth and in fact, several of the items were worth substantially less than the last item listed, and the customer was not guaranteed to receive an item of significant value. In fact, in virtually every case, the customer was awarded the least valuable gift on the list, usually the "vacation certificate" or a "collectible" such as an item of memorabilia or minor historical artifact which had been offered in the

6

initial list of premiums.

15.     The salesperson/co-conspirator would require a minimum purchase of advertising speciality items (such as pens, mugs, or magnetic business cards), usually in an amount of no less than approximately $498.00 or $598.00, to qualify for one of the promised gifts or premium awards. The salespersons by their statements implied that the value of the advertising specialty items and premiums combined, exceeded the dollar amount of the purchase from Best Marketing. In fact, the true value of the advertising specialty items ordered, combined with the true value of the premium actually awarded, was a fraction of the total amount paid by the typical customer.

16.     It was further a part of the conspiracy that defendant and other Best employees, as Best Marketing's business continued, would and did limit and cause the limiting of telephone calls to avoid customers in states where complaints and/or legal action were more likely to take place, and where the fraudulent nature of Best's business operations was more likely to be exposed.

17.     It was further a part of the conspiracy that, following a customer's initial purchase, the customer's name would be given, under the direction of HEXTER, to one of the "loader/re-loader" defendants GOLDBERG, DUDLEY, PENNEY and MARTIN, or another "loader/re-loader" to "re-sell" the customer a quantity or quantities of advertising specialty items at inflated prices, with a variation on the previously used premium award "pitch," that tied continued customer purchases of advertising specialty items to the award of one in four or more guaranteed premiums. To this end defendants GOLDBERG, DUDLEY, PENNEY and MARTIN, under the supervision of HEXTER, at the various times of their employment, used the various phone names indicated, supra, and re-contacted customers to indicate that the contacted customers had a special status as a designee and/or potential designee of a major or extraordinary award selected by Best Marketing, which would be

7

obtained by an additional purchase of advertising specialty items.

18.  Thus, defendants would "re-load" or "re-sell" or cause the "re-loading" or "re-sale"

of customers with explicit and/or implied promises that the value of the premiums to be awarded

would far exceed the dollar amount expended by the customer, where, in truth and in fact, the funds

expended by the customer would far exceed the true value of the advertising specialty items combined

with the true value of the premium or premiums given.  Further, rather than being a drawing or

selection in which a customer had a viable opportunity to receive a premium of the highest value

"down the road" (with the top premium usually represented to be an automobile or other vehicle),

the selection process was pre-determined by the re-loader who always selected a premium designed

to at least minimally satisfy the customer, while assuring a significant commission to the "loaders"

and profit to Best Marketing and HEXTER.

19.  It was part of the conspiracy that the "loaders/re-loaders" were permitted by HEXTER

to vary their sales presentations or "pitches" according to the skill and experience of the "loaders"

to utilize one or more of the scenarios indicating the special status of the customer, whether as the

"Businessman of the Year," or "Grand National Finalist," or "state finalist," or selectee of a random

computer designation; any such special "status" was represented to be peculiar to the customer who

was being "pitched" or sold, when in truth and in fact such status was not unique but was common

to numerous customers contacted by "re-loaders" and was the result of a pre-written or pre-planned

"pitch" designed to flatter and deceive the customer into parting with his/her monies or credit card

funds expended on advertising speciality items on the expectation of more valuable merchandise or

premiums to be awarded then and/or in the future.  Often, it was represented that another purchase

of advertising speciality items would guarantee the customers the opportunity to progress to the next

level of premium award, such as a significant portion of "$500,000" in bonuses or awards.

20.    It was further a part of the conspiracy that the defendants, at various times, made or caused the making of interstate telephone calls containing false and misleading statements representations and promises, including but not limited to the following:

A.    During "front" pitches, on initial contact by Best, a customer was promised
      a real opportunity to receive one of approximately five "major" premiums
      or bonuses, which were by implication, worth more than the purchase price
      of the advertising specialty items purchased, when in truth and in fact, the
      bonus to be awarded was pre-determined by the salesperson and/or Best
      Marketing and in virtually all cases was worth a fraction of the amount
      expended by the customer.

B.    During "re-load" (secondary or repeated) sales pitches, each customer was
      told that he/she had a special status as a selected recipient of a major award
      such as a businessman/businesswoman/businessperson of the year or grand
      national or state finalist or other specially selected recipient(selectee) of a
      bonus which could be received upon another purchase of Best
      merchandise, when, in truth and in fact, numerous individuals had the same
      status, which was nothing extraordinary at all, and all "re-load" customers
      were being given virtually the same deceptive pitch and could not and
      would not receive the top premiums.

C.    During various pitches, defendants often represented or caused the
      representation that a photo was needed for publicity to attract more

9

Scanned for use - 0:00CR6270 Document 1 page 9 Tue Oct 03 09:18:42 2000

customers upon receipt of the major award, when in truth and in fact. in

virtually all cases, a photo would not be used as publicity to attract

customers and the customer would not receive the major award.

D.   During the "re-load" pitches. the customer was told he was dealing with

"Mike Gordon," "David Best." or "Bill Swanson:" with "Ted Brown." "Ed

White," or "Russ Walton;" with "Lincoln Green," "Dr. Grant Maxwell,"

"Jim St. James," or "Dr. St. James;" or with "Charlie Cole," "Jerry Fried,"

or "Fred Murphy:" when in truth and in fact. GOLDBERG, DUDLEY.

PENNEY and MARTIN, respectively. as indicated. supra, were the real

names of the individuals with whom customers were dealing.

E.   With "re-load" pitches customers were often told that they were dealing

with an officer, director, or other principal of Best Marketing, when, in

truth and in fact. they were dealing with "re-loaders," salesmen with no

official corporate status or power.

F.   With "re-load" pitches, customers were told, directly and indirectly, at

various times, that the persons selling to them again (the "re-loaders") had

some special knowledge of or ability to determine the selection of the

customer for the top awards, often by language indicating that the

individual representing Best Marketing would "take care of" or look after

the customer, or by other language indicating that the Best representative

was steering the selection of the customer for one of the top awards when

in truth and in fact, the customer would not and could not receive the top

10

Scanned Image - In00CR4270 Document 1 page 16 Tue Oct 03 06:18:42 2000

award.

H.    In some cases, it was indicated to customers that Best would pay all of the

taxes due on any award or premium, when, in truth and in fact, neither Best

nor its representative ever took such steps for its customers.

I.    In "re-load" sales, it was usually indicated in the language of superlatives that

a premium was the "nicest" or "most expensive" thing the company had ever

done or the customer could ever receive, when in truth and in fact, many

customers had and would receive the same or equivalent item(s) and Best

representative made virtually the same superlative promises to every

customer.

J.    Both initial customers and "re-load" customers were told that they had a

genuine chance to win an automobile or other vehicle (often with several

selections of make and model in the same promotion) which would definitely

be awarded, when, in truth and in fact, no more than one car a year was ever

awarded, and that customer was personally chosen by HEXTER or his

designated representative, not by any random selection, and at no time did

Best ever award all of the makes and models represented in the "pitches" to

customers.

K.    In the "re-load" pitches, customers were told that a particular award or

promotion was coming up in the next weeks or months,...or especially for a

certain holiday or time of year, to induce the customer to act quickly to make

additional purchases, when in truth and in fact, virtually identical offers were

11

being made to customers all the time and on a continuing basis without regard to the date or event which was used as an excuse or convenient reference for the solicitation.

21.    It was further a part of the conspiracy that defendants often used and directed the use of credit card charges or overnight courier services to pick up checks or payments, to quickly obtain monies and credits before customers could further investigate Best Marketing or re-consider the wisdom of their purchases.

22.    It was further part of the conspiracy that defendants would exchange and/or direct the passing of customer names for re-selling efforts by others, or, as the interest of the "re-loader" defendants appeared, they themselves would use different phone names with the same customer to create a new opportunity to "re-sell" to the individual, advertising specialty items at inflated prices.

## OVERT ACTS

The following overt acts, among others, were committed in the Southern District of Florida, by at least one of the co-conspirators, in furtherance of the conspiracy and to effect and accomplish the objects of the conspiracy:

23.    On or about August 30, 1993, defendant EDWARD HEXTER, a/k/a David Best, caused a lease agreement to be signed by and between Best Marketing as tenant and SM 101, Limited, A Florida Limited Partnership, SM Corporation, General Partner, as landlord, for the Lauderhill, Florida, office space.

24.    On or about January 25, 1995, defendant EDWARD HEXTER, a/k/a David Best, purchased lead sheets from American Business Lists, which contained the names of potential customers.

25.   On or about March 6, 1996, defendant EDWARD HEXTER, a/k/a David Best, caused to be filed with the Florida Secretary of State a 1996 Annual Report, identifying himself, HEXTER, as the president and director of Best Marketing.

26.   On or about April 23, 1996, defendant EDWARD HEXTER, a/k/a David Best, represented to R L. Wright that Wright would receive three of the named premiums, which would be "randomly computer selected."

27.   On or about May 30, 1996, defendant EDWARD HEXTER a/ka David Best represented to William Latham by correspondence that Latham would receive one of five named premiums, which would be "randomly computer selected."

28.   On or about March 11, 1996, defendant MARK GOLDBERG, a/k/a Mike Gordon, placed an interstate telephone call to Eugene J. Grawe, in the state of Illinois for the purpose of selling advertising specialty items.

29.   Defendants DUDLEY, PENNEY and MARTIN engaged in and/or caused interstate telephone communications with victims, which are described in Counts 2-31 below, each of which is incorporated herein by reference as an overt act of the named defendant, which was committed in furtherance of the conspiracy.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-31

30.   Paragraphs two through twenty-nine of Count 1 of this indictment are realleged and incorporated herein by reference as though fully set forth herein.

31.   From at least 1991, to at least on or about July 17, 1996, in Broward County, in the Southern District of Florida, and elsewhere, the defendants,

13

EDWARD HEXTER,
a/k/a "David Best,"
MARK GOLDBERG.
a/k/a "Mike Gordon,"
a/k/a "David Best,"
a/k/a "Bill Swanson,"
ROBY DUDLEY.
a/k/a "Ted Brown,"
a/k/a "Ed White."
a/k/a "Russ Walton,"
CHARLIE MARTIN,
a/k/a "Charlie Cole,"
a/k/a "Fred Murphy,"
a/k/a "Jerry Fried,"
and
HANNIBAL PENNY,
a/k/a "Jim St. James,"
a/k/a "Lincoln Green,"
a/k/a "Dr. Grant Maxwell,"
a/k/a "Dr. St. James,"

knowingly and willfully devised and intended to devise a scheme and artifice to defraud and for the

purpose of obtaining money from persons throughout the United States by means of false and

fraudulent pretenses, representations and promises, well knowing that said pretenses, representations

and promises, would be and were false when made, as set forth in paragraph 30, supra.

<u>WIRE FRAUD</u>

32.    On or about the dates enumerated as to each count below, at Lauderhill, Broward

County, in the Southern District of Florida, and elsewhere, for the purpose of executing and in

furtherance of the aforesaid scheme and artifice to defraud and for obtaining money and property by

false and fraudulent pretenses, representations and promises, and attempting to do so, the defendants

as described in each count below, did knowingly and willfully transmit and cause to be transmitted

in interstate and foreign commerce by means of wire communication certain signals and sounds, as

14

more particularly described below:

| COUNT | DEFENDANT | DATE | WIRE COMMUNICATION FROM LAUDERHILL, FLORIDA |
|---|---|---|---|
| 2 | ROBY DUDLEY, a/k/a Ted Brown | 02/23/96 | Interstate telephone call to Gerard Baldocchino. in the state of Maine. |
| 3 | ROBY DUDLEY. a/k/u Ted Brown | 02/27/96 | Interstate telephone call to Dave Brownfield, in the state of Michigan. |
| 4 | ROBY DUDLEY. a/k/a Ted Brown | 03/01/96 | Interstate telephone call to R.L. Wright, in the state of Virginia. |
| 5 | ROBY DUDLEY, a/k/a Ed White | 03/06/96 | Interstate telephone call to David D. Poffenberger, III, in the state of Delaware. |
| 6 | ROBY DUDLEY. a/k/a Ted Brown | 04/23/96 | Interstate telephone call to R.L. Wright, in the state of Virginia. |
| 7 | ROBY DUDLEY, a/k/a Ted Brown | 05/17/96 | Interstate telephone call to Larry Humphrey, in the state of Tennessee. |
| 8 | ROBY DUDLEY, a/k/a Ed White | 05/29/96 | Interstate telephone call to David D. Poffenberger, III, in the state of Delaware. |
| 9 | ROBY DUDLEY. a/k/a Ted Brown | 06/03/96 | Interstate telephone call to Jim Vogelpahl, in the state of Kentucky. |
| 10 | ROBY DUDLEY, a/k/a Ted Brown | 06/10/96 | Interstate telephone call to Victor L. Bench. in the state of Missouri. |
| 11 | HANNIBAL PENNEY. a/k/a Dr. Grant Maxwell | 02/08/96 | Interstate telephone call to Rick Clark, in the state of New York. |
| 12 | HANNIBAL PENNEY, a/k/a Dr. Jim St. James | 02/16/96 | Interstate telephone call to Mike Carey, in the state of Michigan. |
| 13 | HANNIBAL PENNEY, a/k/a Dr. St. James | 03/26/96 | Interstate telephone call to Irving Amron, in the state of New Jersey. |

15

| COUNT | DEFENDANT | DATE | WIRE COMMUNICATION FROM LAUDERHILL, FLORIDA |
|---|---|---|---|
| 14 | HANNIBAL PENNEY, a/k/a Dr. St. James | 3/27/96 | Interstate telephone call to Vickie Keel, in the state of Alabama |
| 15 | HANNIBAL PENNEY, a/k/a Dr. Jim St. James | 03/29/96 | Interstate telephone call to Bernard Roy Baker, in the state of New York. |
| 16 | HANNIBAL PENNEY, a/k/a Lincoln Green | 05/02/96 | Interstate telephone call to Dr. J. Gordon Longenecker, in the state of Pennsylvania. |
| 17 | HANNIBAL PENNEY, a/k/a Dr. Grant Maxwell | 05/07/96 | Interstate telephone call to George Bayer, in the state of Nebraska. |
| 18 | HANNIBAL PENNEY, a/k/a Dr. Grant Maxwell | 05/28/96 | Interstate telephone call to Patricia Lindmark, in the state of Louisiana. |
| 19 | HANNIBAL PENNEY, a/k/a Jim St. James | 05/29/96 | Interstate call to Irving Amron, in the state of New Jersey. |
| 20 | HANNIBAL PENNEY, a/k/a Dr. Grant Maxwell | 06/28/96 | Interstate telephone call to Dr. Terry Nofziger, in the state of Indiana. |
| 21 | CHARLES MARTIN, a/k/a Charlie Cole | 02/13/96 | Interstate telephone call to Ray Terrizzi, in the state of Pennsylvania. |
| 22 | CHARLES MARTIN, a/k/a Charlie Cole | 02/21/96 | Interstate telephone call to Rick Ackerson, in the state of Maryland. |
| 23 | CHARLES MARTIN, a/k/a Jerry Fried | 04/03/96 | Interstate telephone call to William Latham, in the state of Minnesota. |
| 24 | CHARLES MARTIN, a/k/a Charlie Cole | 04/10/96 | Interstate telephone call to Ray Terrizzi, in the state of Pennsylvania. |

16

| COUNT | DEFENDANT | DATE | WIRE COMMUNICATION FROM LAUDERHILL, FLORIDA |
|-------|-----------|------|---------------------------------------------|
| 25 | CHARLES MARTIN, a/k/a Fred Murphy | 04/16/96 | Interstate telephone call to Ray McEachern, in the state of Minnesota. |
| 26 | CHARLES MARTIN, a/k/a Charlie Cole | 05/03/96 | Interstate telephone call to Ron G. Hall, in the state of Oklahoma. |
| 27 | CHARLES MARTIN, a/k/a Jerry Fried | 05/30/96 | Interstate telephone call to William Latham, in the state of Minnesota. |
| 28 | CHARLES MARTIN, a/k/a Fred Murphy | 06/03/96 | Interstate telephone call to Ray McEachern, in the state of Minnesota. |
| 29 | CHARLES MARTIN, a/k/a Fred Murphy | 06/04/96 | Interstate telephone call to Raymond Hewett in the state of Ohio. |
| 30 | CHARLES MARTIN, a/k/a Fred Murphy | 06/05/96 | Interstate telephone call to Richard Vorel, in the state of Illinois. |
| 31 | CHARLES MARTIN, a/k/a Charlie Cole | 06/06/96 | Interstate telephone call to Ray Terrizzi, in the state of Pennsylvania. |

17

11/20/00    12:16 FAX 3055307139        U.S. ATTY-CIVIL                    ☒019

All in violation of Title 18, United States Code, Sections 1343 and 2.

A *TRUE BILL*

FOREPERSON

GUY A. LEWIS
UNITED STATES ATTORNEY

DEBRA J. STUART
ASSISTANT U.S. ATTORNEY

18

## UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, Plaintiff, | CASE NUMBER |
|---|---|

v.

*Charles Martin*

**Defendant/Material Witness.**

| | COMPLAINT | INDICTMENT/INFORMATION |
|---|---|---|
| | 00-2792M | |
| | Violation of Title __18__ | Section __1343, 371, 2__ |

☐ PERSONAL RECOGNIZANCE (Signature only - no dollar amount)
☐ UNSECURED APPEARANCE BOND IN THE AMOUNT OF $ _____    *off of money*    *his 2 sts* RELEASE No. __23040__
☒ APPEARANCE BOND IN THE AMOUNT OF $ __32,000.00__
  ☐ WITH CASH DEPOSIT (AMOUNT OR %) _____
  ☒ WITH AFFIDAVIT OF SURETY NO JUSTIFICATION (Form CR-4)
  ☐ WITH AFFIDAVIT WITH JUSTIFICATION OF SURETY (Form CR-3)
  ☐ WITH DEEDING OF PROPERTY
☐ COLLATERAL BOND IN AMOUNT OF $ _____ (Cash or Negotiable Securities)
☐ CORPORATE SURETY BOND IN AMOUNT OF $ _____ (Separate Form Required)
☐ ADDITIONAL REQUIREMENTS: _____

☐ RELEASE TO PRETRIAL ONLY
☒ FORTHWITH RELEASE
☐ ALL CONDITIONS OF BOND SHALL
   BE MET AND BOND POSTED BY:

_____
_Date_

☒ BAIL FIXED BY COURT _____    ☐ ALL REQUIREMENTS HAVE BEEN MET: _____
                    DEPUTY CLERK                                              DEPUTY CLERK

### PRE-CONDITIONS TO RELEASE

☐ You shall surrender to the Clerk of Court all passports issued to you ☒ and not apply for the issuance of a passport during the pendency of this case.
☐ Bail is subject to <u>Nebbia</u> hearing which is a hearing to inquire about the source of the collateral.
  ☐ The <u>Nebbia</u> hearing can be waived by the government.

### ADDITIONAL CONDITIONS OF RELEASE

*In addition to the GENERAL CONDITIONS of RELEASE, as specified below, the following conditions of release are imposed upon you:*

☒ Pretrial Services Supervision ☐ ☐ [ ] INTENSIVE
☒ Travel is restricted to: __CDC + SD Dist of FL__
☒ Do not enter premises of any airport, seaport, or terminal which permits exit from the continental U.S. without Court permission.
☒ Do not enter premises of any bus, railroad, airport, or seaport terminal which permits exit from area of restricted travel without Court permission.
☒ Do not use or possess illegal drugs. *Alcohol* ☒ Cooperate in drug / alcohol testing as deemed necessary by Pretrial Services
☐ You shall participate in a residential drug/alcohol treatment program as approved by Pretrial Services.
☐ You shall possess NO firearms or destructive devices.
☒ You are to reside with __PSA appr.__
☒ Other conditions: __Mrs + Inglew; Ntg w/ PSA__

### GENERAL CONDITIONS OF RELEASE

I will appear in person in accordance with any and all directions and orders relating to my appearance in the above entitled matter as may be given or issued by the Court or any judicial officer thereof, in that Court or before any Magistrate Judge thereof, or in any other United States District Court to which I may be removed or to which the case may be transferred. *Dist px at 1439* __11.30.00, 10 3U__ ☐ a.m.

I understand the next ordered appearance is at __Southern Dist of Florida__ _____ ☐ p.m.
                                              (Place)                          (Date/Time)

I will abide by any judgment entered in this matter by surrendering myself to serve any sentence imposed and will obey any order or direction in connection with such judgment as the Court may prescribe.

I will not leave the State of California except upon order of this Court, and I will immediately inform my counsel of any change in my residence address or telephone number so that I may be reached at all times.

I will not commit a Federal, State, or local crime during the period of release.

I will not intimidate any witness, juror or officer of the court or obstruct the criminal investigation in this case in violation of Title 18 U.S.C. Section 1503 and 1510. Additionally, I will not tamper with, harass or retaliate against any alleged witness, victim or informant in this case in violation of Title 18 U.S.C. Section 1512 and 1513.

### ACKNOWLEDGMENT OF DEFENDANT/MATERIAL WITNESS

AS A CONDITION OF MY RELEASE ON THIS BOND, PURSUANT TO TITLE 18 OF THE UNITED STATES CODE, I HAVE READ OR HAVE HAD INTERPRETED TO ME AND UNDERSTAND THE GENERAL CONDITIONS OF RELEASE, THE PRE-CONDITIONS AND ADDITIONAL CONDITIONS OF RELEASE AS CHECKED ABOVE AND AGREE TO COMPLY WITH ALL CONDITIONS OF RELEASE IMPOSED ON ME AND TO BE BOUND BY THE PROVISIONS OF LOCAL CRIMINAL RULES 5.2, 5.4 AND 5.5

FURTHERMORE, IT IS AGREED & UNDERSTOOD THAT THIS IS A CONTINUING BOND (INCLUDING ANY PROCEEDING ON APPEAL OR REVIEW) WHICH SHALL CONTINUE IN FULL FORCE & EFFECT UNTIL SUCH TIME AS DULY EXONERATED.

I UNDERSTAND THAT VIOLATION OF ANY OF THE GENERAL AND/OR ADDITIONAL CONDITIONS OF RELEASE AS GIVEN ON THE FACE OF THIS BOND MAY RESULT IN A REVOCATION OF RELEASE, AN ORDER OF DETENTION AND A NEW PROSECUTION FOR AN ADDITIONAL OFFENSE WHICH COULD RESULT IN A TERM OF IMPRISONMENT AND/OR FINE.

I FURTHER UNDERSTAND THAT IF I FAIL TO OBEY AND PERFORM ANY OF THE GENERAL AND/OR ADDITIONAL CONDITIONS OF RELEASE AS GIVEN ON THE FACE OF THIS BOND, THIS BOND MAY BE FORFEITED TO THE UNITED STATES OF AMERICA. IF SAID FORFEITURE IS NOT SET